UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17-cv-329-FDW

| | |
|---|---|
| MITCHELL JOSEPH MARTIN, | ) |
| Plaintiff, | ) |
| vs. | ) **ORDER** |
| CHAD MURRAY, et al., | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on Defendants Murray, Patterson, and Waddell's Motion for Summary Judgment, (Doc. No. 37).

## I. BACKGROUND

*Pro se* Plaintiff filed a Complaint about inadequate medical treatment that passed initial review as to Detective Chad Murray. The Court granted Plaintiff leave to amend to attempt to cure the deficiencies in the rest of his claims. He filed an Amended Complaint that "minimally" passed initial review on a claim of medical deliberate indifference against Murray, Sergeant Patterson, Jail Administrator Lydia Waddell, and Nurse Rachel Ruppe. (Doc. No. 16 at 5). Defendant Ruppe filed a Motion to Dismiss that was granted. (Doc. No. 36). The remaining Defendants have filed a Motion for Summary Judgment, (Doc. No. 37), that is pending before the Court.

**(1)** <u>**Amended Complaint**</u> (Doc. No. 11)

Plaintiff alleges in his verified Amended Complaint, (Doc. No. 11 at 17), that he was arrested after a fist fight on July 19, 2017, during which he broke his left hand. During this arrest, Plaintiff "informed Detective Murray that his left hand was fractured and needed medical treatment

1

at a hospital." (Doc. No. 11 at 5). "It was very apparent from the swelling in [Plaintiff's] hand that [he] was in need of some medical care." (Doc. No. 11 at 5). "Detective Murray handcuffed the Plaintiff's swollen hand and transported the Plaintiff to the Rutherford County Detention Facility … for central booking." (Doc. No. 11 at 5).

Plaintiff was booked by Officer-in-Charge Sergeant Patterson. (Doc. No. 11 at 6). During booking Plaintiff "informed Sgt. Patterson that his left hand was fractured/swollen and was in need of medical treatment." (Doc. No. 11 at 6). Although Sgt. Patterson witnessed the "severe swelling of the Plaintiff's left hand, and his ongoing agonizing pain, Sgt. Patterson deliberately ignored the Plaintiff's prolonged suffering; and did nothing to get care for him" and Plaintiff was assigned to regular population. (Doc. No. 11 at 6).

Plaintiff saw Nurse Ruppe on July 22 and told her he had "chronic and debilitating pain" since his arrest and pleaded for pain medication and a trip to the hospital for treatment. (Doc. No. 11 at 7). Plaintiff's hand was x-rayed on July 24, which showed his left hand was "severely fractured and misaligned" (Doc. No. 11 at 8).

On August 20 and September 20, 2017, Plaintiff sent grievances to Jail Administrator Waddell stating that he was not receiving proper medical treatment and, as a result, his bones fused together improperly and caused him to permanently lose mobility in the hand. Plaintiff received no response. Defendant Waddell should have known that Plaintiff had a severely swollen/fractured hand and needed outside medical treatment. The negligence of her employees was deliberate indifference.

Plaintiff seeks nominal, compensatory, and punitive damages, and injunctive relief.

**(2)** **<u>Defendants' Motion for Summary Judgment</u>** (Doc. No. 37)

Defendants argue that summary judgment should be granted because Plaintiff cannot

demonstrate that Defendants Murray and Patterson were deliberately indifferent to his medical care, and because Defendant Waddell's failure to respond to a grievance was not deliberate indifference. All Defendants argue that they are entitled to qualified immunity.

**(3)** **Plaintiff's Response** (Doc. No. 40)

Plaintiff was informed of the importance of responding to Defendants' motion as well as the legal standard applicable to summary judgment motions. See (Doc. No. 39).

Plaintiff filed an unverified response to Defendants' Motion for Summary Judgment. (Doc. No. 40). He argues that Defendants knew he had a serious medical need, *i.e.*, a broken bone. Plaintiff claims that he told Defendant Murray that his hand was broken when Murray handcuffed him and that he needed to go to the hospital for medical treatment. Murray refused and instead took Plaintiff to jail.

Plaintiff claims that he also told Defendant Patterson that he had a broken bone and this was logged into the computer at intake. Rather than being taken to the hospital, Plaintiff was placed in regular population. A broken bone is a serious medical need that requires immediate medical attention by a doctor at a hospital, however, Plaintiff did not see by a prison nurse until four days later. Plaintiff filed two grievances with Defendant Waddell to fix the problem but she never responded to the grievances. Plaintiff sat in jail for three months while his bones fused improperly and he had to have corrective surgery on February 18, 2018 because of the Defendants' actions. He has a steel plate, screws, and a permanent scar from the surgery.

**(4)** **Defendants' Reply**

Defendants do not dispute that a broken bone is a serious medical need. However, the existence of a serious medical need does not equate to deliberate indifference. Defendant Murray brought Plaintiff to the jail where he immediately underwent a medical screening. Defendant

Patterson looked at Plaintiff's hand and it did not appear to be broken. Plaintiff was not in pain or complaining about being in pain. Neither Murray nor Patterson believed that Plaintiff was in need of immediate attention or at a risk of harm. Plaintiff was seen by Nurse Ruppe shortly after arriving at jail, not four days later as Plaintiff asserted, and he was given medication and an x-ray. Plaintiff's desire to be taken immediately to the hospital does not control because an inmate cannot direct his own medical treatment. Plaintiff received care on numerous occasions; his belief that more should have been done in the way of diagnosis and treatment is not constitutional harm. Defendants are entitled to qualified immunity because they relied on Nurse Ruppe to treat Plaintiff, which she did. Defendants had no reason to believe that they were violating Plaintiff's clearly established rights by providing the medical screening form to Nurse Ruppe.

**(5) Evidence**[1]

**(A) Declaration of Chadd Murray** (Doc. No. 38-2)

Defendant Chadd Murray is a Sergeant with the Rutherford County Sheriff's Office. An interdiction team including Murray went to arrest Plaintiff into custody on an outstanding felony warrant and several probation violation orders on July 19, 2017. Plaintiff was found hiding under bedsheets inside a home. Defendant Murray did not transport Plaintiff to jail; he was transported by Rutherford County Sheriff's Deputy Perez. At the jail, Deputy Perez did not indicate that Plaintiff required immediate medical attention. In addition, Plaintiff never informed Defendant Murray that he needed immediate medical attention, nor did Murray believe that Plaintiff was in any risk of harm after his arrest. If an arrestee requires immediate medical attention due to a serious injury, he or she is taken to a hospital prior to being booked at the jail. The jail will not accept inmates for admission who are in need of immediate medical attention. If Deputy Perez had

---

[1] This section is not exhaustive.

informed Murray that Plaintiff needed immediate medical attention, Murray would have ordered Perez to take Plaintiff to the hospital. Plaintiff was taken to the jail and was booked, which includes a medical screening examination. When Plaintiff was booked, Defendant Murray left the jail.

**(B)** **<u>Declaration of John Patterson</u>** (Doc. No. 38-3)

Defendant Patterson is a Rutherford County Jail detention officer. When an individual is brought to the Jail, they are fingerprinted, photographed, and mental and medical health screenings are administered. If an individual is brought to the Jail and requires immediate medical assistance, the Jail officer informs the arresting officer that the person needs to be treated before booking. This may occur in situations when the arrestee is bleeding, has other obvious signs of injury, or is severely impaired.

Defendant Patterson was working in the Jail's booking area on July 19, 2017, when he booked Plaintiff. When Defendant Patterson observed Plaintiff in the booking area, he did not believe that Plaintiff need immediate medical attention or that Plaintiff was in any risk of harm. During the medical examination questions, Plaintiff informed Defendant Patterson that he thought he broke his left hand. Defendant Patterson observed his hand and it did not appear to be broken. Plaintiff was not complaining about any pain. However, in an abundance of caution, Defendant Patterson noted Plaintiff's complaint on the medical questionnaire and placed it in the nurse's office so that the nurse could follow up with Plaintiff's complaints. The jail nurse is on staff Monday through Friday from approximately 8:30 AM to 3:00 PM. On July 20, 2017, Plaintiff had to attend a court hearing and did not see the nurse. Defendant Patterson recalls that Plaintiff saw the jail nurse, Rachel Ruppe, on July 21, 2017, and on several occasions shortly thereafter.

**(C)** **<u>Declaration of Justin Splawn</u>** (Doc. No. 38-4)

Splawn is a First Sergeant at the Rutherford County Sheriff's Office. As such, he was

Administrator at the Rutherford County Jail. As part of his job duties he is familiar with the medical care administered to inmates at the Jail.

In July 2017, the Jail contracted with Institutional Medical Services LLC ("IMS") to provide medical services to inmates at the Jail. Nurse Rachel Ruppe, an IMS employee, was on call at the Jail from approximately 8:00 AM to 3:00 PM five days a week. Ruppe was supervised by Dr. John Piland.

When inmates are brought to the Jail, the undergo medical screening by a Jail employee. This questionnaire asks the inmate 20 questions about their medical background, history, and any current medical problems. If the questionnaire reveals that an inmate needs subsequent treatment or examination, the Jail employee will place the medical questionnaire in the Jail nurse's office for further treatment or examination.

As Jail administrator, Splawn does not provide medical care. He and the detention officers he supervises rely on medical staff to provide inmates with appropriate care.

**(D)** **Plaintiff's Medical Questionnaire** (Doc. No. 38-5)

Plaintiff's Medical Questionnaire dated July 19, 2017, and signed by "Registered Nurse" on July 20, 2017, states:

19    DO YOU HAVE ANY MEDICATION, PRESCRIPTIONS OR CURRENT MEDICAL PROBLEMS THAT NEED ATTENTION?

    Yes    Comment: poison oak all over, **left hand broke**. not suicidal.

20    IS THERE ANY EVIDENCE OF RECENT PHYSICAL INJURY SEEN ON INMATE?

    **No**    Comment:

21    IF YES, WAS INMATE TREATED FOR THESE INJURIES PRIOR TO ADMISSION?

    Answer:

(Doc. No. 38-5 at 3) (emphasis added).

**(E)** <u>**Time Line**</u>

7/19/17         Plaintiff is arrested and booked (Doc. No. 38-5 at 3)

7/20/17         Plaintiff has a court date so does not see a nurse (Doc. No. 38-3 at 3)

7/21/17         10:45 AM: <u>Medical Intake Screening</u> by R Ruppe (Doc. No. 38-6 at 2)
Chief complaint "intake L) hand pain/swelling punched wall "before I came in"
Other comments: "L) hand edema noted over 4th knuckle "punched wall" x-ray ordered
Clinical data: "No acute distress"

21:52 Hrs: <u>Radiology Report</u> (Doc. No. 38-6 at 4)
Indication: "3 PAIN"
Clinical history: "Possible fracture"
Findings: There is an acute transverse fracture of the mid fifth metacarpal. No displacement is seen. An oblique fracture of the mid fourth metacarpal is seen with very slight displacement of the bony fragments.
Soft tissue swelling is seen.
The fractures of the fourth and fifth metacarpals appear acute.
Old posttraumatic changes of the wrist are present with mildly deformed radiocarpal articulations. The changes appear old and posttraumatic.
Impression: Acute fractures mid fourth and fifth metacarpals minimally displaced.

7/22/17         <u>Progress Note</u> (Doc. No. 38-6 at 6)
"F/U due to hurt L hand from an injury prior to coming to jail."
Ibuprofen 800 mg p.o. twice a day for 7 days

7/24/17         <u>Progress Note</u> (Doc. No. 38-6 at 6)
"x-ray report received – sent to Dr. Piland. Hand wrapped @ last visit, uncooperative c care. Refuses to show tech meds are taken – curses staff… D/C/ ibuprofen d/t uncooperative…."

7/31/17         <u>Progress Note</u> (Doc. No. 38-6 at 6)
Follow up re skin infection

8/20/17         First grievance to Waddell (Doc. No. 11 at 8)

9/20/17         Second grievance to Waddell (Doc. No. 11 at 8)

2/18/18         Plaintiff claims he underwent corrective surgery (Doc. No. 40) (unverified)

## II. LEGAL STANDARDS

**(1)** **Summary Judgment**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fec. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion. Celotex, 477 U.S. at 324 ; Kipps v. Ewell, 538 F.2d 564, 566 (4th Cir. 1976); Fed. R. Civ. P. 56(e). However, a *verified* complaint, like the Amended Complaint that Plaintiff filed, is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); Davis v. Zahradnick, 600 F.2d 458, 459–60 (4th Cir. 1979) (holding that the factual allegations contained in a verified complaint establish a prima facie case under 42 U.S.C. § 1983, so as to preclude summary judgment).

**(2)     Deliberate Indifference**

"[T]he Eighth Amendment's prohibition against 'cruel and unusual punishments' [extends] to the treatment of prisoners by prison officials" and "forbids the unnecessary and wanton infliction of pain," Hill v. Crum, 727 F.3d 312, 317 (4th Cir. 2013) (internal quotations omitted). It appears that Plaintiff was an arrestee or pre-trial detainee at the relevant times, so his deliberate indifference claim is properly brought under the Fourteenth Amendment rather than the Eighth Amendment, but the analysis is the same under both.[2] See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983); see also Martin v. Gentile, 849 F.2d 863 (4th Cir. 1988) (applying the Fourteenth Amendment to an arrestee's deliberate indifference claim); but see Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473, 2475 (2015) (holding that the test for excessive force claims

---

[2] In the Amended Complaint, Plaintiff refers to himself as a convicted and sentenced state prisoner. (Doc. No. 11 at 4). That may be the case at the time he filed the Amended Complaint, however, it appears that he was an arrestee and pretrial detainee at the time the incidents in question occurred.

brought by pretrial detainees under the Fourteenth Amendment differs from the test for excessive force claims brought by convicted prisoners under the Eighth Amendment); see Lanier v. Henderson Cnty. Det. Ctr., 2016 WL 7007537 at *2, n. 3 (W.D.N.C. Nov. 29, 2016) (noting that the Supreme Court in Kingsley did not explicitly extend the objective reasonableness standard outside the excessive force context); see, e.g., Duff v. Potter, 665 Fed. Appx. 242, 244-45 (4th Cir. 2016) (applying the Kingsley standard to a detainee's excessive force claim but not his medical need claim).

"Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test set forth in Farmer v. Brennan, [511 U.S. 825, 832 (1994)]." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016). The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). In order to be sufficiently serious, the deprivation must pose "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from ... exposure to the challenged conditions." De'lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citation omitted). To constitute deliberate indifferent to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825. Where a deliberate indifference claim is predicated on a delay in medical care, there is no Eighth Amendment violation unless "the delay results in some substantial harm to the patient" such as "marked" exacerbation in his medical condition or "frequent complaints of severe pain." Formica v. Aylor, 739 Fed. Appx. 745, 755 (4th

Cir. 2018) (noting that Fourth Circuit unpublished opinions are not binding precedent but noting that the substantial harm standard is consistent with at least four other courts of appeals) (quoting Webb v. Hamidullah, 281 Fed. Appx. 159, 166-67) (4th Cir. 2008), citing Sharpe v. S.C. Dep't of Corr., 621 Fed. Appx. 732, 734 (4th Cir. 2015)).

Mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852. Further, "mere '[d]isagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances." Scinto, 841 F.3d at 225 (quoting Wright v. Collins, 766 F.2d 841, 840 (4th Cir. 1985)).

**(3)** **Qualified Immunity**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The existence of qualified immunity "generally turns on the 'objective reasonableness' of the actions" without regard to the knowledge or subjective intent of the particular official. Am. Civil Libs. Union of Md., Inc. v. Wicomico County, Md., 999 F.2d 780, 784 (4th Cir. 1993) (quoting Anderson v. Creighton, 483 U.S. 635, 639, 641 (1987)) (internal citations omitted).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims by determining whether: (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and (2) the

right at issue was "clearly established" at the time of defendant's alleged misconduct. While the sequence of the steps set forth in Saucier is "often appropriate," it is not mandatory. Pearson, 555 U.S. at 236. Judges are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Id.

To overcome the qualified immunity defense at the summary judgment stage, the plaintiff must have shown facts that make out a violation of a constitutional right, and the right at issue must have been "clearly established" at the time of the defendant's alleged misconduct. Thompson v. Commonweath of Va., 878 F.3d 89, 97 (4th Cir. 2017) (citing Pearson, 555 U.S. at 232). The analysis takes place against the backdrop of two dueling interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231.

To find a right is clearly established does not mean that "the exact conduct at issue [must] have been held unlawful for the law governing an officer's actions to be clearly established." Amaechi v. West, 237 F.3d 356, 362 (4th Cir. 2001). Rather, the court's analysis must take into consideration "not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." Id. at 362-63 (internal quotation omitted). The right at issue is "clearly established" for qualified immunity purposes if:

> [t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

Anderson, 483 U.S. at 640 (citation omitted).

To determine if the right in question was clearly established, the court first looks to cases from the Supreme Court, the Fourth Circuit, or the highest court of the state in which the action arose. Owens ex rel. Owens v. Lott, 372 F.3d 267, 279 (4th Cir. 2004). In the absence of "directly on-point binding authority," courts may also consider whether "the right was clearly established based on general constitutional principles or a consensus of persuasive authority." Booker v. South Carolina Dep't of Corr., 855 F.3d 533, 543 (4th Cir. 2017); Owens, 372 F.3d at 279 ("the absence of controlling authority holding identical conduct unlawful does not guarantee qualified immunity."). Ordinarily, the unlawfulness of government conduct must be apparent in light of pre-existing law. White v. Pauly, 137 S.Ct. 548, 442 (2017). However, a "general constitutional rule … may apply with obvious clarity ... even though the very action in question has not previously been held unlawful. Hope v. Pelzer, 536 U.S. 730, 741 (2002) (citing United States v. Lanier, 520 U.S. 259, 271 (1997)). Therefore, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Id. at 741.

### III. DISCUSSION

**(1) Deliberate Indifference**

**(A) Defendants Murray & Patterson**

Viewing the facts in Plaintiff's favor, Plaintiff told Defendant Murray that his hand was fractured and that he needed medical attention, and Plaintiff's hand was swollen. Defendant Murray states in his sworn declaration, and Plaintiff does not dispute, that Murray did not believe Plaintiff needed any immediate medical attention or that Plaintiff was in any risk of harm after his arrest. Plaintiff also told Defendant Patterson that his hand was fractured and that he needed

medical attention. Plaintiff alleges that his hand was severely swollen and he was in ongoing agonizing pain. However, Plaintiff does not allege that he told Defendant Murray or Patterson that he was in ongoing agonizing pain. Defendant Patterson asserts, and Plaintiff does not dispute, that he observed the hand which did not appear to be broken and that Plaintiff was not complaining of any pain. Nor does Plaintiff dispute Patterson's assertion that Patterson did not believe Plaintiff needed any immediate medical attention or was in any risk of harm. Defendant Patterson asserts, and Plaintiff does not dispute, that he noted Plaintiff's complaint about his hand on the medical intake form in an abundance of caution and placed that form in the nurse's office for follow-up.[3]

Plaintiff fails to make out a claim for deliberate indifference against Defendants Murray and Patterson. Assuming that Plaintiff had a serious medical need,[4] Plaintiff has failed to demonstrate that Defendant Murray or Patterson subjectively knew of a risk of substantial harm and drew the inference, or that their actions resulted in substantial harm. Although Plaintiff asserts that his hand was swollen and painful, Defendants Murray and Patterson both state in their sworn declarations that Plaintiff did not tell them that his hand was painful, that they did not believe that required immediate medical attention, and that they did not believe Plaintiff was at any risk of harm. See generally Farmer, 511 U.S. at at 837 (a person is only deliberately indifferent when he disregards a risk of harm of which he is aware); Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (prison official was not deliberately indifferent even though he had actual knowledge of facts from which a reasonable person might have drawn an inference that defendant's actions exposed

---

[3] Defendants have filed evidence demonstrating that the Jail Nurse worked Monday through Friday. The Court takes judicial notice that July 19, 2017 when Plaintiff was arrested and booked was a Wednesday. See Fed. R. Ev. 201.

[4] Defendants do not dispute that a broken bone is a serious medical need. (Doc. No. 41 at 1); see Cokley v. Townley, 924 F.2d 1051 (4th Cir. 1991) (treating inmate's broken hand as a serious medical need).

plaintiff to a substantial risk of serious harm because he did not actually draw the inference).

Defendant Patterson nevertheless referred Plaintiff to the nurse upon his intake into jail in an abundance of caution and that the nurse would be present the next day to follow up with Plaintiff. See generally Greeno v. Daley, 414 F.3d 645, 655-56 (7th Cir. 2005) (a jail official's failure to take further action once he had referred the matter to medical providers cannot be viewed as deliberate indifference); compare Cokley v. Townley, 924 F.2d 1051 (4th Cir. 1991) (vacating summary judgment in favor of a correctional officer where the officer called the nurse and followed her instructions by providing ice after learning of prisoner's injury on a Friday afternoon, then *ignored his continued complaints of pain* until Monday when the hand was x-rayed and found to be broken).

The undisputed evidence shows that Plaintiff was unable to see the jail nurse the day after he was booked because he was in court but that he saw the jail nurse the following day at which point he had "no acute distress." (Doc. No. 38-6 at 2). An x-ray revealed two fractures in his hand, one of which was had no displacement and the other which was only slightly displaced for which jail medical staff provided ibuprofen and wrapping. (Doc. No. 38-6 at 4).

Plaintiff has failed to demonstrate that Defendant Murray or Patterson, who are not medical personnel, subjectively knew of a substantial risk of harm, drew the inference and deliberately failed to provide care, or that the short delay in treatment caused Plaintiff substantial harm such as marked exacerbation of his condition or frequent complaints of severe pain. Defendants Murray and Patterson will therefore be granted summary judgment.

**(B)** **Defendant Waddell**

Plaintiff alleges in his verified Amended Complaint that he sent grievances to Waddell on August 20 and September 20, 2017 stating that he was not receiving proper medical treatment and

that his bones had fused together improperly. He received no response from Defendant Waddell and ultimately received surgery on February 18, 2018 to correct the improperly fused fractures.

The undisputed evidence reveals that Plaintiff was provided ibuprofen for seven days and the hand was wrapped on July 22, 2017; the x-ray report was received on July 24 and showed two fractures, one with no displacement and the other with very slight displacement; Dr. Piland saw Plaintiff that same day but Plaintiff was uncooperative; and Plaintiff was seen by medical on July 31, 2017 for a different complaint and there was no mention of his hand injury. (Doc. No. 38-6 at 6).

Plaintiff has failed to demonstrate that Defendant Waddell, as a non-medical administrator, was personally involved with a denial or delay of treatment, deliberately interfered with a health care provider's treatment, or tacitly authorized or was indifferent to a health care worker's misconduct. See Formica, 739 Fed. Appx. at 755 (affirming summary judgment for jail superintendent because who was insufficiently involved in the conduct of which plaintiff complained); Banks v. Gore, 738 Fed. Appx. 766 (4th Cir. 2018), *certiorari petition docketed* January 3, 2019 (where there is no direct evidence that the prison official actually knew of and disregarded a serious risk of harm, the risk must be so obvious that actual knowledge can be inferred from its mere existence). Moreover, Defendant Waddell is entitled to summary judgment insofar as Plaintiff complains about her failure to respond to his grievances because "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Defendant Waddell will therefore be granted summary judgment.

**(2) Qualified Immunity**

Defendants have asserted a qualified immunity defense. Plaintiff has failed to overcome

that defense by showing facts that make out a violation of a clearly established constitutional right at the time of the Defendants' alleged misconduct.

Plaintiff has not shown that Defendants Murray, Peterson, or Waddell knew of and disregarded a serious medical need. Defendants Murray and Peterson knew that Plaintiff was asserting he had a broken hand and allegedly observed swelling but he did not express that he was in pain an they did not believe that Plaintiff's hand was broken or that he was at any risk of harm from being booked rather than having immediate medical treatment. Plaintiff has failed to show that Defendant Waddell had any personal knowledge of his case whatsoever or knew that Plaintiff was not receiving appropriate care. Neither the Fourth Circuit nor the United States Supreme Court mandated that an arrestee must be transported immediately to the hospital any time there is swelling, the arrestee complains that he thinks his bone is fractured, and states that he needs to go to the hospital. See Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 306 (4th Cir. 2004) (reversing denial of summary judgment for officer defendants under qualified immunity analysis where there was no evidence suggesting that the officers recognized that their actions were inappropriate under the circumstances). Nor does the Fourth Circuit or United States Supreme Court require a prison administrator to respond to a grievance. See Adams, 40 F.3d at 75; see, e.g., Deck v. Rubenstein, 2016 WL 2726543 at *5 (N.D. W. Va. April 13, 2016) (warden and department of corrections commissioner were entitled to qualified immunity on plaintiff's allegation that they "rubber stamped" his grievances and failed to intervene when he complained about his medical care because they had no involvement in direct day-to-day responsibility for health services and plaintiff failed to specify any direct acts taken by either defendant that violated his constitutional rights).

The Court has determined as a matter of law that no constitutional violation occurred and

that Defendants did not violate a clearly established right, therefore, qualified immunity applies.

## IV. CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment is granted and this case will be closed.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 37), is **GRANTED**.

2. The Clerk of Court is instructed to close this case.

Signed: January 29, 2019

Frank D. Whitney
Chief United States District Judge